**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-02337-NYW

HUMZA QURESHI,
LAURYN QURESHI,

       Plaintiffs,

v.

PENKHUS MOTOR COMPANY,

       Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant Penkhus Motor Company's Motion for Summary Judgment [#12, filed on June 20, 2016] pursuant to the Parties' consent under 28 U.S.C. § 636(c) and the Order of Reference dated December 29, 2015 [#9].  The court has reviewed the Parties' briefing [#12, # 14, and #16], heard argument on the motion on August 23, 2016, and has considered the applicable case law.  For the reasons set forth herein, the court hereby **DENIES** the Motion for Summary Judgment for the following reasons.

**BACKGROUND**

      This case arises under Federal Credit Reporting Act ("FCRA").  In their unverified Complaint, Plaintiffs Huzma Qureshi ("Mr. Qureshi") and Lauryn Qureshi (collectively, "Plaintiffs" or "the Qureshis") allege that they are individual consumers who reside in Colorado Springs, Colorado.  [#1 at ¶ 2].  On or about August 3, 2015, Mr. Qureshi contacted Penkhus

Motor Company ("Penkhus") about potentially purchasing a vehicle. [*Id.* at ¶ 4]. On August 4, 2015, one of Defendant's sales representatives emailed Mr. Qureshi, stating "Glad to hear your (sic) ready to get an Evo. … I understand your (sic) trading in a 2014 Honda this Time (sic).[1] I will speed the process up by doing a sight unseen appraisal with you." [#12-1 at 5]. As part of the "sight unseen appraisal," Defendant asked Mr. Qureshi to provide detailed information about his 2014 Honda. [*Id.*]. Not soon after, Mr. Qureshi provided the requested information and stated, "Thank you for doing this. … We are actually interested in a GSR this time around." [*Id.* at 6]. In that same email correspondence, Mr. Qureshi stated, "Credit info slightly different. Wife will now be primary. My income changed to $84,000 yearly. Address and employer are the same." [*Id.*]. Later that afternoon, Defendant informed Mr. Qureshi of the value of his 2014 Honda and stated, "We will need a good size down payment," to which Mr. Qureshi replied, "What would be a good sized down payment be on a GSR?" [*Id.*]. This was the extent of the correspondences between Mr. Qureshi and Defendant provided to the court, [*id.*], and Plaintiffs apparently did not provide express written or oral authorization to the Penkhus sales person to obtain their credit reports, [#1 at ¶¶ 5-6].

On or about August 4, 2015, Penkhus obtained both Plaintiffs' credit reports from three major consumer credit reporting agencies: Equifax, Experian, and Trans Union. [#10 at 4]. Plaintiffs allege that the Defendant had neither authorization nor any other permissible purpose under the FCRA to obtain their credit reports thus violating the FCRA. [#1 at ¶ 12]. Plaintiffs further allege that Defendant's violation was willful, thus entitling Plaintiffs to actual damages, statutory damages, punitive damages, attorney fees and costs. [*Id.* at ¶ 13]. Alternatively,

---

[1] As discussed below, the Qureshis had contacted Penkhus in February 2015 regarding the purchase of a car, but the sale was not consummated. [#12 at 1, 3].

Plaintiffs contend that even if Defendant's violation was negligent, they are still entitled to actual damages, attorney fees, and costs. [*Id.* at ¶ 14].

In moving for summary judgment, Penkhus argues that it only accessed Plaintiffs' credit reports with authorization from Plaintiffs, or for another permissible purpose, namely that it had a legitimate business need for the information in connection with the purchase of a vehicle from Penkhus. [#12 at 5-8]. It urges the court to grant summary judgment based on a written authorization executed by the Qureshis six months prior to the incident at issue, in February 2015. [#12 at 5-6]. It further contends that summary judgment is proper because Penkhus had a legitimate business need for the information because "Plaintiffs contacted the salesperson Mr. Clarke at Penkhus Motors on August 4, 2015, indicating they wanted to move forward with a vehicle purchase." [*Id.*at 7]. Plaintiffs argue, but do not submit any testimony through declarations or otherwise, that in August 2015, Plaintiffs "merely inquired about obtaining a price on a trade in and a *different* car. Defendant then pulled Plaintiffs' credit reports without Plaintiffs' permission and without having a permissible purpose under the Fair Credit Reporting Act (FRCA)." [#14 at 2]. In Reply, Defendant argues that "[the] communications [between Penkhus and Plaintiffs] speak for themselves, and by indicating 'this time around,' make clear that the Plaintiffs were intending to purchase a vehicle again in early August 2015." [#16 at 2].

## LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is

not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson,* 477 U.S. at 248.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

In reviewing a motion for summary judgment the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002).  Only when a moving party establishes that the absence of any genuine issue of material fact does the burden shift to the non-moving party to go beyond the pleadings and set forth specific facts that would be admissible.  *Anderson*, 477 U.S. at 248.  If the non-moving party carries its burden, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case.  *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994) (citation omitted).  In doing so, the non-moving party "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue

for trial." *See also Anderson*, 477 U.S. at 256.  To be considered by the court, the evidence must be admissible, and the court views such admissible evidence in the light most favorable to the non-moving party. *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1239 (D. Colo. 2012) (citations omitted). Any factual ambiguities are resolved against the moving party, favoring the right to trial.  *Id.* (citing *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir.1995); *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir.1987)).

## ANALYSIS

Congress established the Fair Credit Reporting Act in 1970 to ensure "fair and accurate credit reporting, promote efficiency in the banking system, and *protect consumer privacy*." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (emphasis added).  To that end, the FCRA limits the circumstances in which a credit reporting agency may provide a consumer's credit report.  15 U.S.C. § 1681b(a)(2).  There are three statutory provisions that are relevant to this action.  A credit agency may furnish a consumer's credit report to a third party upon written instruction by the consumer to whom it relates.  *Id.* at §1681b(a)(2).  A person or entity who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished" may also access the credit report.  *Id.* at § 1681b(a)(3)(A).  Finally, a person or entity may also obtain an individual's credit report for a legitimate business need under 15 U.S.C. § 1681b(1)(3)(F)(i).

The Parties do not dispute the applicable law, but they do contest whether Penkhus was authorized to obtain the Qureshis' respective credit reports on August 4, 2015, based on authorizations executed in February 2015 or based on other permitted purposes.  Under the FCRA, it is the plaintiff's burden to establish that his or her credit information was obtained for

an impermissible purpose, and it is the defendant's burden to establish a permissible purpose as a complete defense.  *See Ritchie v. Northern*, 14 F.Supp.3d 229, 244 (S.D.N.Y. 2014) (explaining the Parties' burdens under 15 U.S.C. § 1681b); *Glanton v. DirecTV, L.L.C.*, --- F.Supp.3d ---, 2016 WL 1177334, at *5–6 (D.S.C. Mar. 23, 2016) (holding that the plaintiff has the burden of establishing that the defendant had no legitimate business purpose for obtaining her credit report).

This court is not prepared to rule that as a matter of law, a written authorization executed in February 2015 is sufficient to permit Penkhus to obtain Plaintiffs' credit reports six months later, nor does the communication between the Parties constitute written authorization as a matter of law.  In the absence of written permission, an automobile dealer may obtain a credit report "only in circumstances where it is clear ***both*** to the consumer and to the dealer that the consumer is actually initiating the purchase or lease of a specific vehicle and, in addition, the dealer has a legitimate business need for consumer information."  *See Traveler v. Glenn Jones Ford Lincoln Mercury 1987*, Civil Action No. CV-05-0817-PHX-SRB, 2006 WL 173687, *4 (D. Ariz. Jan. 24 2006) (emphasis added).

While a close call, in reviewing the evidence submitted by the Parties, this court is not persuaded that there is an absence of any genuine issue of material fact – despite the correspondence that states "[c]redit info is slightly different," [#12-1 at 6] and Plaintiffs' failure to submit their own testimony in rebuttal.  Namely, the correspondence that both sides rely upon may be reasonably interpreted in different ways.  And there is no evidence in the record from which the court can ascertain Plaintiffs' expectation or understanding as to why Penkhus accessed their credit reports.  Defendant submits no testimony taken from Plaintiffs in which

they admit that they were initiating the purchase or lease of a specific vehicle, or that they were authorizing Penkhus to access their credit reports for the purposes of providing specific information about a specific car, and the burden lies with Defendant to establish a permissible intent under FCRA.  In light of the record before it, this court concludes that any issues with respect to the interpretation of the correspondence; the understanding of the respective parties; and the credibility of witnesses are for the jury to decide.[2]

## CONCLUSION

Therefore, **IT IS ORDERED** that:

(1)    Defendant Penkhus Motor Company's Motion for Summary Judgment [#12] is **DENIED**; and

(2)    The Final Pretrial Conference set for September 27, 2016 **REMAINS SET**.

DATED: September 26, 2016                    BY THE COURT:

                                             s/Nina Y. Wang_____
                                             United States Magistrate Judge

---

[2] While the court does not pass on the ultimate merits of the claim, it does note that the circumstances as presented on the record currently before this court does not support a finding of any willful violation, if any violation occurred at all.   Accordingly, at the Final Pretrial Conference, the Parties should be prepared to address the viability of Plaintiffs' claim that Defendant willfully violated the FCRA and what damages are recoverable under a negligent violation versus willful violation theory.