**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Number 15-cv-02337-NYW

HUMZA QURESHI, and
LAURYN QURESHI,

      Plaintiffs,

v.

PENKHUS MOTOR COMPANY,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER
FOR ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT**

---

Magistrate Judge Nina Y. Wang

      Pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated December 29, 2015, [#9], this matter was before the court for a trial to the court on November 14, 2016.  The court took evidence through testimony and through documents, and at the close of discovery, Defendant Penkhus Motor Company ("Penkus Motor Company") moved orally for judgment as a matter of law pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.  Consistent with Rule 52(c), the court declined to render any judgment on the oral Motion for Judgment as a Matter of Law and took evidence from Defendant.  Fed. R. Civ. P. 52(c) ("The court may, however, decline to render any judgment until the close of evidence.").  For the reasons stated below, the court finds and enters judgment in favor of Defendant Penkhus Motor Company.

## FINDINGS OF FACT

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the court makes the following findings of fact based on the evidence presented in the record:

1.     Plaintiffs Huzma Qureshi ("Mr. Qureshi") and Lauryn Qureshi ("Ms. Qureshi") are individual consumers who reside in Colorado Springs, Colorado.

2.     In February 2015, the Plaintiffs contacted the Defendant about potentially purchasing a vehicle.

3.     In February 2015, each Plaintiff executed an Application Statement, granting Penkus Motor Company permission to obtain their respective credit reports.

4.     A sale between the Qureshis and Penkus Motor Company was not consummated in February 2015.

5.     Penkhus Motor Company obtained the credit scores for both Mr. Qureshi and Ms. Qureshi on or about February 23, 2015.

6.     On or about August 4, 2015, Mr. Qureshi contacted Penkhus Motor Company by telephone about potentially purchasing a vehicle.

7.     On August 4, 2015, one of Defendant's sales representatives, Jeff Clarke, emailed Mr. Qureshi, stating:

"Glad to hear your (sic) ready to get an Evo.  Again mine (sic) name is Jeff and I will be helping you again.  I understand your (sic) trading in a 2014 Honda this Time (sic).  I will speed the process up by doing a sight unseen appraisal with you.  Please provide the following info : VIN#, Current Mileage, Exterior and interior colors, All factory installed equipment.  All after market equipment.  On a scale of 1-10 10 being best rate the following:  Tires, Glass, Body Paint, Interior, Mechanical.  2 sets of keys?  Clean History report?  Filed an insurance claim on the vehicle?  List all dings and dents.  Who is it finance (sic) thru?  What is your payoff?  Is all your credit info still the same as far as address, employer?

8.      On August 4, 2015, Mr. Qureshi sent the following e-mail in reply to Mr. Clarke's correspondence:

> Fantastic to hear from you.  Thank you for doing this.
> 1HGCR2F3XEA120116
> Mileage: 20000
> Exterior: Blue
> Interior: Grey
> All factory is standard
> No aftermarket.
> Tires 8/10
> Glass 9/10 a couple of rock chips no cracking.
> Body 9/10 Front lower bumper scrape
> Paint 9/10 Front lower bumper scrape
> Interior 9/10 Needs to be cleaned.
> Mechanical 10/10 No issues, full records.
> 2 sets of original keys
> Clean Car fax
> Full service records available.
> I am the original owner.
> No insurance claims.
> Financed through Ent.
> Payoff:  $26,500
> Credit info is slightly different
> Wife will now be primary
> My income changed to $84,000 yearly
> Address and employer are same
> We are actually interested in a GSR this time around.

9.      In August 2015, Mr. Qureshi initiated contact with Penkhus Motor Company on behalf of himself and his wife, for the purpose of obtaining information regarding the value of a potential trade-in, a 2014 Honda, and to determine what his "best" monthly payment might be for a new vehicle.

10.     At the time that Mr. Qureshi contacted Penkhus Motor Company in August 2015, Plaintiffs had purchased and financed at least three vehicles.

11.     Ms. Qureshi had authorized her husband to act on her behalf for the purposes of contacting Penkhus Motor Company in August 2015, and was aware of the correspondence exchanged between Mr. Qureshi and Mr. Clarke.

12.     Later in the afternoon of August 4, 2015, Defendant informed Mr. Qureshi of the value of his 2014 Honda and stated, "We will need a good size down payment," to which Mr. Qureshi replied, "What would be a good sized down payment be on a GSR?"

13.     Mr. Clarke responded that a down payment between $5000-$7000 would be needed, as the trade-in value of the car would not cover the amount owed by the Qureshis.

14.     On August 4, 2015, Penkhus Motor Company obtained both Plaintiffs' credit reports.

15.     Neither Mr. Qureshi nor Ms. Qureshi executed a written authorization for Defendant to obtain their credit reports in August 2015.

16.     Mr. Qureshi's credit report dated August 4, 2015, indicated a score of 609,[1] and reflected a number of reasons in the score factor description.

17.     Ms. Qureshi's credit report dated August 4, 2015, indicated a score of 640, and reflected a number of reasons in the score factor description.

18.     Mr. Qureshi had the general understanding that credit inquiries may lead to a lowering of a person's credit score.

19.     Unbeknownst to Penkhus Motor Company, the Qureshis were also negotiating with other car dealers with respect to trade-in values for their existing vehicles.

---

[1] While the court would not ordinarily discuss a party's personal financial information as a matter of public record, Plaintiffs have put their credit scores at issue in this case by alleging that Penkhus Motor Company's improper access to their credit reports in August 2015 resulted in a decrease in that score; an increase of the interest rate applied to their new car purchase at AutoNation Suburu; and the requirement of a down payment to purchase that new vehicle.

20.     On or about July 30, 2015, Freedom Honda obtained Mr. Qureshi's credit report with his permission.

21.     On or about August 1, 2015, Heuberger Motors obtained Mr. Qureshi's credit report with his permission.

22.     On or about August 1, 2015, Chase Auto, on behalf of AutoNation Subaru, obtained Mr. Qureshi's credit report with his permission.

23.     Mr. Clarke believed that the Qureshis were seeking information from Penkhus Motor Company regarding potentially financing a car purchase from the dealership, and that Mr. Qureshi was inquiring about monthly payments for a vehicle, which, in his understanding, is dependent in part upon a consumer's credit worthiness.

24.     The Qureshis ultimately did not purchase a vehicle from Penkhus Motor Company.

## CONCLUSIONS OF LAW

This case arises under the Fair Credit Reporting Act ("FCRA").  Specifically, Plaintiffs contend that Penkhus Motor Company impermissibly accessed their credit reports, and as a result, the terms and conditions of their automobile purchase from a separate dealership, AutoNation Subaru, were adversely affected and they suffered non-economic damages. Congress established the FCRA in 1970 to ensure "fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); 15 U.S.C. § 1681.  The FCRA limits the circumstances in which a credit-reporting agency may provide a consumer's credit report.  15 U.S.C. § 1681b(a).  There are three statutory provisions that are potentially relevant to this action.  A credit agency may furnish a consumer's credit report to a third party upon written instruction by the consumer to whom it relates.  15 U.S.C. §1681b(a)(2).  A person or entity who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be

furnished" may also access the credit report.  15 U.S.C. § 1681b(a)(3)(A).  Finally, a person or entity may also obtain an individual's credit report for a legitimate business need under 15 U.S.C. § 1681b(a)(3)(F)(i).  A person or entity that obtains a consumer's credit report for an improper purpose may be found civilly liable to that consumer.  15 U.S.C. § 1681b(f).

To establish a violation of the FCRA for obtaining a credit report without a proper purpose, a plaintiff must prove that (1) there was a consumer report; (2) defendant used or obtained it; (3) defendant did so without a permissible statutory purpose; and (4) defendant was negligent (or willful) in doing so.  *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).  Prior to trial, Plaintiffs withdrew their claim of a willful violation of the FCRA, and proceeded only on the claim that Defendant negligently violated the FCRA.  [#28; #34].  A consumer is entitled to actual damages for a negligent violation of the FCRA, together with reasonable attorney fees and costs.  15 U.S.C. § 1681o.  *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1179 (10th Cir. 2013).

Based on the evidence at trial, this court concludes that Plaintiffs have failed to establish elements three and four, and have failed to establish that the actions of Penkhus Motor Company caused any actual harm to Plaintiffs.

## I.      Express Authorization

As an initial matter, Plaintiffs argue that Penkhus Motor Company lacked written authorization to access their credit reports in August 2015.  This court respectfully agrees.  The FCRA permits an entity to obtain a consumer credit report "in accordance with the *written instructions* of the consumer to whom it relates."  15 U.S.C. § 1681b(1)(2) (emphasis added).  There was no evidence presented to the court that either Mr. or Ms. Qureshi executed a written

authorization for Penkhus Motor Company to obtain their credit report on or about August 4, 2015. While it was established that Mr. and Ms. Qureshi executed a written authorization in February 2015, this court declines to conclude that such written authorizations were open-ended or extended to an entirely separate transaction on a different vehicle over six months later. *Cf. Nixon v. Enterprise Car Sales Co.*, No. 09–cv–1896–HEA, 2011 WL 4857941, *3–*6 (finding that defendant had written authorization to obtain plaintiff's credit reports when various documents signed by plaintiff made clear that defendant retained written authorization to run multiple credit reports, if necessary, in order to obtain third party financing for the vehicle that plaintiff was attempting to purchase); *accord Meeks v. Murphy Auto Group, Inc.*. No. 09–cv–1050–T–TBM, 2010 WL 5174525, at *7 (M.D. Fla. Dec. 10, 2010) (concluding that defendant had written authorization from plaintiff to obtain her credit reports in conjunction with its "proposed extension of credit to that customer").

## II.    Credit Transaction

The court next considers whether the evidence at trial established that Penkhus Motor Company obtained the Qureshis' credit reports in August 2015 by a person who "intends to use the information in connection with a credit transaction involving the consumer. 15 U.S.C. § 1681b(a)(3). This court finds that regardless of whether Mr. Clarke was mistaken in his belief that the Qureshis intended to purchase a vehicle from Penkhus Motor Company, he testified credibly that he intended to use the information in connection with a credit transaction involving the Qureshis.

Mr. Qureshi testified that he contacted Penkhus Motor Company not only to ascertain information regarding the trade-in value of his existing vehicle, but also to determine what the "best monthly payment" associated with a vehicle might be. The correspondence between Mr.

Qureshi and Mr. Clarke reflects that Mr. Clarke specifically asked Mr. Qureshi if all his credit information was "the same."  [Tr. Ex. A].  Mr. Qureshi then responded by providing Mr. Clarke specific information regarding his credit information, including that his wife, Ms. Qureshi, would now be "primary," his income had changed, but his address and employer remained the same. [*Id.*].  Plaintiffs' counsel did not identify in their papers or through closing arguments, and this court did not find, any provision of the FCRA that negates Mr. Clarke's intention to use the information in connection with a credit transaction involving the Qureshis and that he believed he was acquiring Plaintiffs' credit reports for the permissible purpose of evaluating that credit worthiness in connection with a credit transaction.  *See e.g.*, *Wells v. Craig & Landreth Cars, Inc.*, 10–cv–00376, 2011 WL 1542121, at *3 (W.D. Ky. Apr. 22, 2011).

Even if the Qureshis did not understand that Mr. Clarke intended to access their credit reports,[2] such lack of understanding does not alter this court's conclusion.  The Federal Trade Commission's Commentary on the FCRA is a "guideline intended to clarify how the Commission will construe the FCRA in light of Congressional intent as reflected in the statute and its legislative history."  16 C.F.R. Part 600, Appendix to Part 600 – Commentary of the Fair Credit Reporting Act.  While the Commentary does not have the force or effect of regulations or statutory provisions, this court finds it instructive that the Commentary states "[w]hen permissible purposes exist, parties may obtain, and consumer reporting agencies may furnish, consumer reports without the consumers' permission or over their objection."  *Id.*; *Landeis v. Future Ford*, 04–cv–2733–MCE–PAN, 2006 WL 1652659, at *5 (E.D. Cal. Jun. 14, 2006). Despite Plaintiffs' arguments to the contrary, the court does not find that the evidence supports a

---

[2] While not dispositive, this court found the testimony of both Mr. Qureshi and Ms. Qureshi regarding any lack of understanding that Mr. Clarke would need access to their credit reports to calculate a "best monthly payment" to be not credible.

conclusion that Penkhus Motor Company accessed Plaintiffs' credit reports in an attempt to ascertain "how much more additional money it could collect" from the Qureshis, but rather to confer a benefit to the Qureshis by determining the "best monthly payment." *See Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 3d 808, 816 (W.D. Ky. 2003).   Therefore, this court concludes that Penkhus Motor Company accessed Plaintiffs' credit reports on August 4, 2015, with the permissible purpose of using the information in connection with a credit transaction with Plaintiffs.

## III.    Legitimate Business Need

Having found that Plaintiffs' claim fails because Penkhus Motor Company was an entity who "intend[ed] to use the information in connection with a credit transaction involving the consumer," this court only briefly touches upon the final permissible use.   Under the FCRA, a person may obtain a consumer's credit report if he otherwise has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer. 15 U.S.C. § 1681b(3)(F)(i).   The evidence in the record reflects that Mr. Qureshi initiated a business transaction with Penkhus Motor Company in August 2015, and Ms. Qureshi authorized her husband to do so on her behalf.   Mr. Clarke's testimony establishes that he accessed the Qureshis' credit reports in August 2015 in an attempt to determine vehicle financing options for the Qureshis.   Nothing in the FCRA requires that the transaction be *consummated*, rather only that the business transaction be *initiated* by the consumer.   Based on the evidence in the record, this court concludes that Penkhus Motor Company accessed Plaintiffs' credit reports on August 4, 2015, with the permissible purpose of using the information for a legitimate business need in connection with a business transaction initiated by the Qureshis.

IV.     **Causation and Damages**

For the purposes of completeness, this court addresses Plaintiffs' failure to establish either causation or actual harm in this case.  Under the FCRA, it is the burden of Plaintiffs to establish that they suffered actual damages.  *Llewellyn,* 795 F. Supp. 2d at 1225–26 *aff'd in part and rev'd in part on other grounds*, 711 F.3d 1173 (10th Cir. 2013).  It is insufficient for the Qureshis to simply testify, without more, that the single credit report obtained by Penkhus Motor Company ruined their credit score, resulting in less favorable terms for the eventual car purchase with AutoNation Subaru.  *Llewellyn*, 711 F.3d at 1180.  Despite identifying a representative of AutoNation Subaru on the witness list for trial, no such representative testified and no documentary evidence from AutoNation Subaru was offered.  The only testimony offered regarding any economic damage was inadmissible hearsay by the Qureshis that they had been told by AutoNation Subaru that the terms of their vehicle financing changed due to the credit report obtained by Penkhus Motor Company.  Ultimately, the Qureshis withdrew their claim to economic damages before the close of trial because of the lack of admissible evidence regarding AutoNation Subaru's actions or any causal connection between the August 4 credit reports and AutoNation Subaru's actions.

A consumer might be able to obtain non-economic damages for a violation of the FCRA even when economic damages are unavailable.  *See Llewellyn*, 711 F.3d at 1182.  But in this case, this court finds the Qureshis' testimony about the emotional distress they suffered unconvincing.  There was no evidence to corroborate any alleged emotional distress, and neither Mr. Qureshi, nor Ms. Qureshi testified as to any emotional impact beyond the date upon which they finalized their purchase through AutoNation Subaru.  Therefore, even if this court had found

any violation of the FCRA (which it does not), the court would award Plaintiffs no damages in this matter.

## CONCLUSION

This court finds that entry of judgment based on the complete record is more appropriate than ruling in favor of Defendant in the context of a motion brought pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.  Therefore, for the reasons stated herein:

(1)     Defendant Penkhus Motor Company's oral Motion for Judgment as a Matter of Law pursuant to Rule 52(c) is **DENIED AS MOOT**;

(2)     Based on the evidence in the record, Plaintiffs have failed to establish a violation of the Fair Credit Reporting Act;

(3)     The Clerk of the Court is directed to **ENTER JUDGMENT** in **FAVOR** of Defendant Penkhus Motor Company and **AGAINST** Plaintiffs Huzma Qureshi and Lauryn Qureshi pursuant to Rule 58 of the Federal Rules of Civil Procedure; and

(4)     Costs be awarded to Defendant Penkhus Motor Company as the prevailing party under Rule 54(d)(1) of the Federal Rules of Civil Procedure pursuant to a Bill of Costs filed no later than November 30, 2016.

DATED:  November 16, 2016                    BY THE COURT:

                                             s/ Nina Y. Wang
                                             United States Magistrate Judge